IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ROBERT S. PHILPOTT                                                                                         PLAINTIFF

v.                                    Civil No. 10-2061

LT. Plaintiff, Van Buren
Police Department (VBPD); LT.
BRENT GRILL, VBPD; DETECTIVE
DICKERSON, VBPD; DETECTIVE
EVERSOLE, VBPD; THE VAN
BUREN POLICE DEPARTMENT;
OFFICER RIGGS, VBPD; and JOHN
DOE OFFICERS 1-3                                                                                          DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff filed this civil rights action pursuant to the provisions of 42 U.S.C. § 1983.  He proceeds *pro se* and *in forma pauperis.*

Plaintiff maintains his civil rights were violated on March 26, 2010.  Specifically, he alleges he was falsely arrested and imprisoned by members of the Van Buren Police Department (VBPD), his vehicle was unlawfully impounded and searched, and that his name was slandered.

Defendants filed a summary judgment motion (Doc. 26, Doc. 27, & Doc. 28).  Plaintiff filed a cross motion (Doc. 39) and a response (Doc. 43) to Defendants' motion.  Defendants responded (Doc. 40) to the Plaintiff's summary judgment motion.  The motions are now ready for decision.

**Background**

On March 26, 2010, Officer David Martin (Martin) was dispatched to the area of South 4th Street and Scott in Van Buren, Arkansas, in reference to a possible rape.  *Plaintiff's Response*

-1-

(Doc. 43) at ¶ 2 (hereinafter *Plff's Resp.*). Martin went to 1300 Scott Street and located Ariel Jones (Jones). *Defendants' Exhibits* A & C (hereinafter *Defts' Ex.*). Jones informed Martin that she had been raped. *Id.* Officer Derek Riggs (Riggs) arrived and both Martin and Riggs observed that Jones was hysterical and sobbing and yelling that she had been raped by "Scotty" who was later determined to be Robert Scott Philpott (Philpott). *Id.* Jones informed Officer Riggs that Philpott raped her in a vehicle under the Fourth Street overpass. *Id.* Riggs observed Jones' hair was disheveled and there were bruises on her legs. *Defts' Ex.* B.

Jones reported that she had been upset earlier in the day when the individual she was in a relationship with was served with a warrant and incarcerated. *Defts' Exs.* A-C. Philpott had come to her residence and the two went to Philpott's family home in Kibler. *Id.* While there, Jones indicated she drank alcohol. *Id.* At some point, Jones asked Philpott to take her home and he refused. *Id.* Philpott then took her to a white church next to the South Fourth Street overpass. *Id.* Once there, Jones reported that Philpott forced her into the back seat of the vehicle and raped her. *Id.*

Riggs and Martin believes Jones' demeanor and appearance were consistent with her account of what had happened to her. *Defts' Exs.* B-C. Jones reported that Philpott was driving a maroon car and was most likely driving back to his home in Kibler. *Defts' Exs.* A-C.

Riggs contacted Sergeant Lawrence Brown (Brown). *Defts' Ex.* B. Brown stated he would contact the Women's Crisis Center about a sexual assault examination of Jones and told Riggs to have Jones lead him to the location of the assault. *Defts' Exs.* at B & E.

Riggs asked Jones to lead him to the location of the alleged rape. *Defts' Exs.* A, B, & C. Jones took Riggs to an area near the Fourth Street overpass and pointed out Philpott's vehicle.

*Defts' Exs.* A & B.  Riggs observed a maroon Mercury Cougar bearing an Arkansas tag 102 MGA next to an old white church building at 903 South Fourth Street.  *Plff's Resp.* at ¶ 9.

Martin arrived at the scene and approached Philpott's vehicle. *Defts' Ex.* C. Martin saw Philpott sitting on the driver's side. *Id.*  Philpott did not respond when instructed to exit the vehicle. *Id.*  Based on Philpott's distant and unresponsive behavior, Martin believed Philpott was intoxicated. *Id.*

Riggs pulled his vehicle in behind Philpott's vehicle at an angle that blocked Jones' view of him. *Defts' Exs.* B & C. Riggs contacted Brown and advised him that the vehicle was still at the scene of the alleged rape. *Defts' Exs.* A-C.

Brown, Lieutenant Steven Weaver (Weaver), and Officer Beatrix Elliot (Elliot) arrived at the scene. *Plff's Resp.* at ¶ 15. According to Riggs, when he ran the car tags, the owner of the vehicle was listed as Linda Philpott. *Defts' Ex.* B. According to Philpott, the car was registered to Pamela Jones. *Plff's Resp.* at ¶ 16. He indicated he had just purchased the car the previous day. *Id.*

Riggs approached the vehicle and noted that Philpott was distant and unresponsive. *Defts' Ex.* B. Based on his observations, Riggs believed Philpott was intoxicated. *Id.* When Philpott finally got out of his vehicle, he was immediately detained on suspicion of rape and placed in handcuffs. *Defts' Exs.* B-C. Riggs believed probable cause existed to arrest Philpott for rape based on Jones' statements and behavior. *Defts' Ex.* D. Riggs also believed there was probable cause to arrest Philpott for public intoxication based on his distant and unresponsive behavior. *Id.*

AO72A
(Rev. 8/82)

Weaver believed probable cause existed based on the information he received over the radio regarding Jones' report, her demeanor, and the fact that Philpott was still at the scene where the alleged rape occurred. *Defts' Ex.* D. Although he does not specify the time, Philpott states Weaver was parked under the Fourth Street overpass about fifteen feet from where the rape was alleged to have occurred. *Plff's Resp.* at ¶ 20. Philpott states that "common sense" indicates Weaver "should of known a rape never happened there. He would of heard the fight." *Id.*

Prosecuting attorney Marc McCune advised Weaver that probable cause existed to arrest Philpott. *Defts' Ex.* D. Riggs placed Philpott under arrest pursuant to the orders of Weaver. *Plff's Resp.* at ¶ 22. Brown photographed and collected wet napkins found inside and around the vehicle for possible DNA evidence. *Defts' Exs.* A & E. Martin transported Philpott to the VBPD for questioning. *Id.* at ¶ 23. After questioning, Philpott was transported to the Crawford County Detention Center. *Defts' Ex.* A; *Plff's Resp.* at ¶ 24.

Because Philpott was not the registered owner of the vehicle, appeared to be intoxicated, and was arrested, the decision was made for the vehicle to be towed. *Defts' Exs.* D-E. The contents of the vehicle were inventoried by Elliot, Brown, and Weaver. *Id.* Two throwing knives were located in a case on the driver's side visor of the vehicle. *Defts' Exs.* C & E. Brown contacted Corporal McGraw so Philpott could be charged with carrying a weapon. *Id.* The inventory sheet also indicates the following items were in the vehicle: a cell phone; a dollar bill; a coat; books; miscellaneous papers; a wallet; and a spare tire. *Defts' Exs.* D, E, H, and J.

The VBPD procedures manual requires officers to tow and impound vehicles when the driver of a vehicle, who is not the owner, is arrested. *Defts' Ex.* I-2. The procedures also require an inventory search to be completed when a vehicle is impounded. *Defts' Ex.* I-1. The inventory

search is to include all spaces within the vehicle, all containers, and the trunk or bed of the vehicle. *Defts' Ex.* I-2. The inventory procedure is for safekeeping of the vehicle and the vehicle's contents. *Defts' Ex.* I-1.

Philpott believes his Fourth Amendment rights were violated when the VBPD towed the car he was in and searched the car without probable cause or a search warrant. *Plff's Resp.* at ¶¶ 26 & 30. Philpott indicates his car was parked at a church, Heaven Bound Pentecostal. *Id.* Philpott maintains that the knives found were legal. *Id.* at ¶ 28.

Philpott also asserts that he was falsely arrested for public intoxication and the charge was dropped after he "blew a 0.00" into the Breathalyzer. *Plff's Resp.* at ¶ 32(A). He has no documentation about the public intoxication charge. *Id.* at ¶ 32(B).

Detective Dixon (Dixon), Detective Eversole (Eversole), Lt. Grill (Grill), and Chief Bell (Bell) were not present at the scene of Philpott's arrest and did not participate in the search and impounding of the vehicle. *Plff's Resp.* at ¶ 33. On March 27th, Dixon advised Philpott of his Miranda rights. *Defts' Ex.* A. Philpott requested an attorney. *Id.*

On April 3, 2010, Amy Sherrill reported the alleged rape in the Times Record. *Plff's Resp.* at ¶ 36. The newspaper article contained information Jones provided to the VBPD and contained in police department incident reports. *Defts' Ex.* A. Philpott maintains Grill gave the newspapers a false story. *Plff's Resp.* at ¶ 37.

On June 8, 2010, a Crawford County Circuit Judge entered an order indicating there was sufficient probable cause to require Philpott to submit to a blood test in connection with the alleged rape of Jones. *Plff's Resp.* at ¶ 39. On June 23, 2010, Dixon transported Philpott to the

Crawford County Hospital to submit to the court ordered blood test. *Id.* at ¶ 40. The blood was placed into evidence and sent to the crime lab. *Id.*

The rape and carrying a weapon charges were dropped on May 27, 2010. *Plff's Resp.* at ¶ 41. Philpott was released from the detention center that day.

On May 30th, Philpott was arrested on failure to appear charges. *Plff's Resp.* at ¶ 44. The failure to appear charges were unrelated to the rape and carrying a weapon charges. *Id.* However, Philpott maintains the reason he did not make his court date was because he was in jail on the rape and carrying a weapon charges. *Id.*

**Applicable Standard**

"Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We view all evidence and inferences in a light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

**Discussion**

Defendants first argue that they are entitled to judgment in their favor because Philpott has brought only official capacity claims and there is no evidence of an unconstitutional policy, custom or practice. Next, Defendants maintain no constitutional violation exists.

*Official versus Individual Capacity Claims*

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the

AO72A
(Rev. 8/82)

United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).

Under § 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. In *Gorman v. Bartch*, 152 F.3d 907 (8th Cir. 1998), the Eighth Circuit discussed the distinction between individual and official capacity suits. As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24-27, 112 S. Ct. at 361-62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25-27, 112 S. Ct. at 362.

*Gorman*, 152 F.3d at 914.

The Eighth Circuit has advised plaintiffs to specifically plead whether government agents are being sued in their official or individual capacities to ensure prompt notice of potential personal liability. *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989). *See also Andrus v. Arkansas*, 197 F.3d 953 (8th Cir. 1999)(In actions against officers specific pleading of individual capacity is required to put public officials on notice they will be exposed to personal liability).

When the plaintiff fails to state whether he is suing an official in his individual capacity, the Eighth Circuit has construed the claim to be against the official in his official capacity only. *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999)("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity."); *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 620 (8th Cir. 1995)("*Nix* requires that a plaintiff's complaint contain a clear statement of her wish to sue defendants in their personal capacities. Neither a cryptic hint in a plaintiff's complaint nor a statement made in response to a motion to dismiss is sufficient.").

A review of the complaint in this case shows that Plaintiff has failed to specifically plead whether the individually named Defendants were being sued in their official or individual capacity. However, the Court has an obligation to liberally construe *pro se* complaints. *Haines v. Krener*, 404 U.S. 519 (1972); *see also White v. Wyrick*, 530 F.2d 818, 819 (8th Cir. 1976)(finding *pro se* petition should be "interpreted liberally and . . . should be construed to encompass any allegation stating federal relief"). In so doing, we must keep in mind that the Plaintiff is without legal expertise and he prepared his own pleading. *Bracken v. Dormire*, 247 F.3d 699, 704 (8th Cir. 2001). Plaintiff in response to the summary judgment motion has indicated he intended to sue the Defendants in "what ever guidelines they may be sued." *Plff's Resp.* at ¶ 46. For this reason, I construe the complaint to be asserting both individual and official capacity claims.

### False Arrest

In *Baker v. McCollan*, 443 U.S. 137 (1979), the Supreme Court stated:

-8-

> The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted-indeed, for every suspect released. Nor are the manifold procedural protections afforded criminal defendants under the Bill of Rights "without limits." *Patterson v. New York*, 432 U.S. 197, 208, 97 S.Ct. 2319, 2326, 53 L.Ed.2d 281 (1977). "Due process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person." *Ibid.*
>
> The Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished "without due process of law." A reasonable division of functions between law enforcement officers, committing magistrates, and judicial officers-all of whom may be potential defendants in a § 1983 action-is entirely consistent with "due process of law."

*Baker*, 443 U.S. at 145-46.

"Probable cause exists if the totality of the facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed . . . an offense." *Flynn v. Brown*, 395 F.3d 842, 844 (8th Cir. 2005)(internal quotation marks and citations omitted). "[D]etermining if probable cause exists is not an exact science," *Brodnicki v. City of Omaha*, 73 F.3d 1261, 1265 (8th Cir. 1996), however, viewing the facts as a whole at the time of Philpott's arrest, I believe a prudent person would have been justified in believing Philpott had committed the offense of rape. Philpott was identified by the alleged rape victim; the victim's demeanor and actions were consistent with a rape having occurred; and Philpott was found at the scene of the rape in the car described by the victim. There is no evidence of a Fourth Amendment violation. *Sheets v. Butera*, 389 F.3d 772, 778 (8th Cir. 2004); *see also Anderson v. Larson*, 327 F.3d 762, 770 (8th Cir. 2003)(A claim of false arrest brought pursuant to § 1983 fails if the officer had probable cause to make the arrest); *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001)("[A] false arrest claim under § 1983 fails as a matter of law where the officer had probable cause to make the arrest. Since the record adequately supports

the conclusion that the police officers had probable cause to arrest Kurtz for tampering, plaintiffs' allegations of false arrest fail to establish a civil rights violation.").

### *Impounding and Inventory Search*

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. "Generally, searches or seizures conducted without prior approval by a judge or magistrate are unreasonable under the Fourth Amendment." *United States v. Kimhong Thi Le*, 474 F.3d 511, 514 (8th Cir. 2007)(citation omitted). As with nearly every general rule, exceptions are recognized. *Id.* One exception to the warrant requirement is recognized "for searching a vehicle lawfully impounded by law enforcement officers." *Id.* (citation omitted). "Impoundment of a vehicle for the safety of property and the public is a valid community care taking function of the police, which does not requirement a warrant." *Id.* (internal quotation marks and citation omitted). When a vehicle is lawfully impounded, "[l]aw enforcement may search [the] . . . vehicle to inventory its contents without obtaining a warrant." *Kimhong Thi Le*, 474 F.3d at 515.

"An inventory search is reasonable and constitutional if it is conducted according to standardized police procedures." *United States v. Garreau*, 658 F.3d 854, 857 (8th Cir. 2011). As no one was present to take control of the vehicle after Philpott was arrested, Defendants standard manual requires the VBPD to arrange for the towing of the vehicle. *Defts' Ex.* I-2, II. As Defendants acted in accordance with standardized police procedure, no constitutional violation exists.

Moreover, in this situation, another recognized exception to the warrant requirement, the automobile exception, would also be applicable. *See e.g., United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003). Under the automobile exception, "if law enforcement had probable cause to believe the vehicle contained contraband or other evidence of crime" the vehicle may be searched without a warrant. *Id.* (*citing Carroll v. United States*, 267 U.S. 132, 158-59 (1925)). In this case, he officers believed the vehicle had been the scene of the alleged rape.

### *False Statements*

Philpott's claim based on the alleged reporting of "false" facts to the newspaper fails as a matter of law. The Supreme Court has made clear that injury to reputation alone cannot support a claim under § 1983. *See Paul v. Davis*, 424 U.S. 693, 708-09 (1976). We need not consider whether the statements made to a newspaper reporter were in defamatory because even if this issue was resolved in Philpott's favor his claim would nevertheless fail as a matter of law. *See e.g., Everett v. City of Chester*, 391 F. Supp. 26, 28 (D.C. Pa. 1975)("With respect to the statements concerning plaintiffs' arrest and incarceration made by members of the Chester Police Department to the local media, the law is clear that the Civil Rights Act does not give rise to a cause of action for defamation").

### **Conclusion**

For the reasons stated, I recommend that Defendants' motion for summary judgment (Doc. 26) be granted and all federal claims be dismissed. I further recommend that Plaintiff's motion for summary judgment (Doc. 39) be denied. To the extent the complaint can be read to

AO72A
(Rev. 8/82)

be asserting state law claims, I recommend that the Court decline to exercise supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367(c).

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 14th day of February 2012.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A (Rev. 8/82)